# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH HOOPER, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-cv-123 |
| v. | ) | |
| | ) | |
| SAFETY-KLEEN SYSTEMS, INC., | ) | |
| and CLEAN HARBORS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Nora Barry Fischer, United States District Judge

### I. INTRODUCTION

This case arises from a workplace injury in which Plaintiff Keith Hooper was severely burned by an open flame torpedo heater. Plaintiff's operative pleading is the Second Amended Complaint (Docket No. 20), which names Safety-Kleen Systems, Inc. ("Safety Kleen") and its ultimate parent corporation, Clean Harbors, Inc. ("CHI") as Defendants. Now pending is a MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) ON BEHALF OF CLEAN HARBORS, INC. (Docket No. 42), in which CHI contends that this Court lacks personal jurisdiction over it. The parties have submitted numerous documents and have thoroughly briefed their respective positions (Docket Nos. 42, 43, 46, 47, 48, 49, 53, 54, 57). On August 22, 2016, the Court conducted oral argument on the motion. *See* Transcript (Docket No. 62). Following oral argument, both parties filed supplemental briefs and exhibits (Docket Nos. 65, 66, 72). The motion to dismiss is now ripe for disposition.

## II. BACKGROUND

Hooper worked at an industrial facility in Erie, Pennsylvania that recycled used oil and solvents. The facility had been owned and operated by Safety Kleen for over thirty years. On the morning of January 30, 2014, he was using a portable kerosene heater to provide heat and thaw frozen pipes. The heater caused an explosion and Hooper suffered severe burns. The fire caused extensive damage to the Return & Fill building. Safety Kleen had begun considering a closure of the Erie facility prior to the accident. For several months, waste materials were sent by drum to Safety Kleen's Akron, Ohio facility for processing. On June 23, 2014, Safety Kleen announced that the Erie branch would be closed effective July 2014. Hooper's job was eliminated.

On December 28, 2012, Safety Kleen was acquired by CHI, a Massachusetts holding company.[1] Safety Kleen continued to exist as a separate corporation after the acquisition, with its headquarters in Richardson, Texas. CHI and Safety Kleen have maintained appropriate corporate formalities. Safety Kleen continued to operate the Erie branch as it had prior to the acquisition. (Docket No. 65-3). CHI maintains that Safety Kleen has functioning officers who retain responsibility for, inter alia, its bottom line, human resources decisions, training, operations and health and safety. (Docket No. 42-1). Safety Kleen's lines of business (parts washing, used oil cleanup, pick up and refining) are different from CHI's other businesses. (Docket No. 42-2 at 41-42). After the acquisition, Safety Kleen kept its own website, www.safety-kleen.com. Information about Safety Kleen could also be obtained on the Clean

---

[1] Defendant Safety-Kleen Systems, Inc. is a wholly-owned subsidiary of CHI, although there are two intermediate corporate entities, SK Holding Company, Inc. and Safety-Kleen, Inc. (Docket No. 42-1).

Harbors website, www.cleanharbors.com. Safety Kleen employees were given access to the Clean Harbors computer network and were eligible to enroll in the Clean Harbors Employee Stock Purchase Plan, the Savings and Retirement Plan, and COBRA coverage in the Clean Harbors group health plan, operated by Clean Harbors Environmental Services, Inc. ("CHESI").

There is a factual dispute as to Hooper's employer. CHI maintains that Hooper was an employee of Safety Kleen at all times, as evidenced by his W-2 forms. (Docket Nos. 42-3, 53-5). Hooper contends that he became an employee of CHESI prior to the accident, based on: (1) oral and written communications he received from Clean Harbors; (2) the change in his paychecks beginning December 28, 2013, which stated that they were issued by CHESI, not Safety Kleen (see Docket No. 47-4); and (3) documents after the injury from the Pennsylvania Department of Labor & Industry, the COBRA health insurance administrator and the Workers Compensation dispute, all of which identified his employer as CHESI.[2] (Docket Nos. 47-5, 47-6, 47-8, 47-9). In addition, Hooper points to the documents connected with the termination of his employment. Hooper has provided a copy of a proposed Severance Agreement and General Release of Claims (Docket No. 47-7), which states, in relevant part: "Hooper and Clean Harbors Environmental Services, Inc. (together with its parent and affiliate corporations being hereinafter collectively referred to as the "Company") agree. . . [to] the terms of the end of my employment with the Company." The signature page references the CHESI Human Resources Department and provides a signature line for CHESI.[3]

---

[2] CHI contends that the identification of CHESI as Hooper's employer was a "clerical error." (Docket No. 42-3).

[3] Plaintiff argues, in the alternative, that CHI is his employer because the instructions he received in connection with the Severance Agreement required it to be signed and returned to CHI, and an

Safety Kleen has not challenged jurisdiction. CHESI has not been named as a Defendant. CHI maintains that it is a Massachusetts holding company only, which has no contacts with Pennsylvania. As set forth in the Affidavit of Michael R. McDonald, Senior V.P., General Counsel and Assistant Secretary of CHI (Docket No. 65-1):

- CHI is the ultimate parent of 128 subsidiary companies, including CHESI;
- CHI does not provide environmental services to customers, its subsidiaries do;
- CHI has no employees and does not provide administrative or support services to its subsidiary companies;
- CHESI provides administrative services to the Clean Harbors family of companies, including business guidelines, benefit plans, IT, insurance and legal;
- CHESI negotiates and provides all HR-related benefits for the Clean Harbors family of companies (except CHI, because it has no employees), including 401(k), Talent Acquisition, performance reviews, succession planning, HR policies, relocation, compensation and training;
- CHI is the beneficial owner of the generic "Clean Harbors" trademark/brand name;
- CHESI and the other subsidiaries use the "Clean Harbors" trademark;
- CHI has nine directors, one of whom is also a director of CHESI;
- CHESI has fifteen officers, nine of whom are also officers of CHI;
- Operational authority of CHESI is vested solely in CHESI's board of directors and officers;

---

unknown person (whom he speculates may have been a CHI employee) delivered the Severance Agreement to him. (Docket Nos. 72-1, 72-2). It was never executed.

- CHI observes corporate formalities with subsidiaries by operating with written consents;
- Employees of CHESI conducted the due diligence prior to CHI's acquisition of Safety Kleen. They did not do a physical inspection of the Erie branch or any other Safety Kleen facility in Pennsylvania.

CHI is a publicly traded company. CHI's 2014 Annual Report described Clean Harbors as a leading provider of environmental, energy and industrial services operating throughout the United States. (Docket No. 48-17). CHI's Form 10-K stated that its operations were managed in six segments, one of which was Safety Kleen, and that "we employed approximately 13,000 active full-time employees." *Id*. CHI's board of directors receives consolidated financial information through the six business segments, which are operated by subsidiary companies. CHESI's finance department is responsible for consolidating the financial reports of all subsidiary companies. Affidavit of Gregory Malerbi, Senior V.P. and Treasurer of CHI (Docket No. 65-7).

There are multiple common officers in the Clean Harbors family of companies. All officers report to Alan McKim, the founder, President, Chairman and CEO of CHI. There is no CEO of CHESI. McDonald Deposition at 79-80 (Docket No. 48). For example, McDonald is the General Counsel of CHI, an employee of CHESI and the Assistant Secretary of all Clean Harbors subsidiaries. Michael Malm is the corporate Secretary of CHI and all the subsidiaries. Eric Gersenberg is the Chief Operating Officer of CHI and the President of CHESI. James Rutledge is the Vice Chairman and President of CHI and Vice President of CHESI and Safety Kleen.

Prior to the incident, CHI issued a Corporate Health & Safety Policy. (Docket No. 48-37). The Policy reflected that CHI and its subsidiaries (all Clean Harbors companies) "must" manage safety in line with this commitment and policy. The Policy was signed by Alan McKim. CHI contends that the Policy is only "aspirational"; that its adoption by Safety Kleen was entirely discretionary; and that Safety Kleen was solely responsible for the health and safety of Safety Kleen employees and facilities at the time of the accident. (Docket Nos. 53-1, 53-2). Hooper points to the mandatory language in the Policy and to its issuance by the CEO of CHI. This fact dispute must be viewed in the light most favorable to Plaintiff at this stage of the case.

Shortly after the incident, a Safety Alert was sent out under the Clean Harbors logo. (Docket No. 48-38). CHI contends that the alert was issued by CHESI, but a reasonable factfinder could conclude that it was issued by CHI. The Safety Alert noted that an incident had occurred "at a Clean Harbors facility," which was also described as "one of our Safety Kleen branches." The Safety Alert stated that the practice of using a space heater to thaw out equipment "must be stopped immediately!" *Id*. Safety Kleen issued a parallel Safety Alert under its own logo. (Docket No. 53-4).

This litigation started in the Court of Common Pleas of Allegheny County, Pennsylvania.[4] On January 29, 2016, CHI filed a Notice of Removal to this Court, with Safety Kleen's consent. The same day, CHI filed an Answer and Affirmative Defenses, which did not include a lack of personal jurisdiction. (Docket No. 4). On February 8, 2016, CHI filed an Amended Answer to assert lack of personal jurisdiction as an affirmative defense. (Docket No.

---

[4] The original state court Complaint named only Safety Kleen as a Defendant. The Amended Complaint filed in state court added CHI as a Defendant and averred that Hooper was an employee of CHI. *See* Docket No. 20-1 ¶ 8.

11). CHI also filed a motion to dismiss (Docket No. 17). On February 24, 2016, Plaintiff filed a Second Amended Complaint in this Court, in which Hooper averred that he was at all relevant times an employee of CHESI. CHI's original motion to dismiss was denied as moot. CHI then filed the instant motion, which is now ripe for disposition.

### III. Legal Analysis

As an initial matter, the Court has not held an evidentiary hearing or made findings regarding the jurisdictional facts. If an evidentiary hearing is not held, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). Therefore, in this case, even though jurisdictional discovery has been conducted and an oral argument has been held, Plaintiff Hooper need only assert a prima facie case for personal jurisdiction over CHI and all disputed facts must be viewed in the light most favorable to Plaintiff. However, the prima facie case must be based on evidence of specific facts in the record. *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, 735 F. Supp.2d 277, 307 (W.D. Pa. 2010). Ultimately, Plaintiff must establish personal jurisdiction by a preponderance of the evidence, either at a pretrial hearing or trial. *Id*.

The Court summarized the general legal principles governing personal jurisdiction in *Smith v. Integral Consulting Servs., Inc.*, 2014 WL 4828972, at *6 (W.D. Pa. Sept. 29, 2014):

> In Pennsylvania, courts are authorized to exercise personal jurisdiction over a defendant to the full extent permitted under the Federal Constitution. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d Cir. 1998); *see also* 42 Pa. Cons.Stat. § 5322(b). The Due Process Clause protects defendants from binding judgments of foreign states with which the defendants had no significant

7

"contacts, ties, or relations." *Burger King v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe v. Wash.*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Due process requires that a defendant be provided a "fair warning" and a "degree of predictability" regarding how its conduct may subject it to legal process and liability in a particular forum. *Burger King*, 471 U.S. at 472. Personal jurisdiction may be established in accordance with these Constitutional principles through a showing of general or specific jurisdiction.

Plaintiff Hooper is not asking the Court to assert "general" personal jurisdiction over CHI. As to "specific" personal jurisdiction, the parties generally agree on the governing law, although they vigorously dispute the application of the law to the facts of this case. As summarized in *Smith*:

> "Specific jurisdiction" is "personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). To establish specific personal jurisdiction, a plaintiff must show that a defendant had fair warning that he or she was subject to legal process in a particular state because the defendant had "minimum contacts" with the state. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Burger King*, 47 U.S. at 472). . . . Under the "traditional test" of specific personal jurisdiction, the plaintiff must demonstrate each of the following: First, the defendant must have purposefully directed its activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.

2014 WL 4828972, at *6.

Purposeful availment does not require physical entry into Pennsylvania; but it does require "deliberate targeting" of this forum by the defendant. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). The "unilateral activity of those who claim some relationship with a nonresident defendant is insufficient." *Id*. The "relatedness" element is not susceptible to a specific, mechanical rule, but must preserve a balance in which a defendant submits to the burdens of litigation in that forum in exchange for the benefits and protections of

that forum's laws. *Id*. at 323. The required causal connection must be closer and more direct than a "but-for" test, but may be somewhat looser than proximate cause. *Id*. The *O'Connor* Court explained that the "contacts" step is by far the most important, with the "fairness" element playing a subsidiary role. *Id*. at 322-23.

Plaintiff contends, first, that the exercise of personal jurisdiction is proper based on the direct activities of CHI. CHI disagrees, arguing that it is only a holding company which has no activities. Plaintiff contends, in the alternative, that jurisdiction is proper under the alter ego doctrine.

### A. CHI's Direct Activities

Plaintiff cites the following "direct" activities by CHI: (1) CHI's purchase of Safety Kleen, including the Erie facility where the accident occurred; (2) the instructions for completing Hooper's severance agreement (Docket No. 72-2) stated that it was to be returned to CHI and the agreement itself (Docket No. 47-7) sought a release of liability for CHESI and its parent CHI; (3) CHI terminated the Safety Kleen pension plan and merged those assets (including Hooper's) into its own plan; (4) numerous workers compensation claims in Pennsylvania were paid under CHI's insurance policy; (5) CHI's Corporate Health & Safety Policy (Docket No. 48-37), which reflects that CHI and its subsidiaries (all Clean Harbors companies) "must" manage safety in line with this commitment and policy; (6) the Safety Alert to stop using portable heaters that was sent out immediately after Hooper's accident; (7) numerous statements in CHI's Form 10-K Annual Report (Docket No. 48-17) about its extensive operations, sales and 13,000 employees.

Most of these alleged direct activities are irrelevant to a specific jurisdiction analysis because they have no connection to the accident that caused Hooper's injuries in this case. The Safety Policy and Safety Alert require closer scrutiny. In essence, Plaintiff contends that CHI

had direct authority to correct the unsafe conditions at the Erie facility and that its failure to do so had a direct relationship to Hooper's injuries. Plaintiff argues that CHI derived a financial benefit from this failure to act, by reducing its expenses. CHI contends that Plaintiff has pointed only to <u>omissions</u> – the alleged failures to prevent and/or fix safety problems – rather than to any affirmative actions CHI took to avail itself of Pennsylvania. CHI contends that personal jurisdiction cannot be based on things it did <u>not</u> do in Pennsylvania. This distinction between actions and omissions has been recognized as constitutionally significant. *See National Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2587 (2012) (holding that the Commerce Clause does not empower Congress to regulate individuals based on omissions/failures to purchase health insurance). Neither party has cited case law that applies this distinction in the jurisdictional context. The Court believes that CHI has the better of this argument, because it is Plaintiff's burden to demonstrate that CHI <u>purposely</u> availed itself of this forum. However, it need not reach a final determination on this issue.

B. Alter Ego Theory

The mere fact of a parent-subsidiary relationship is not enough to establish jurisdiction over the parent corporation. In "an ordinary holding company/subsidiary relationship, not one of undue domination and control," there is no alter ego relationship. *Transp. Ins. Co. v. Am. Harvest Baking Co., Inc.*, 2015 WL 9049273, at *5 (D.N.J. Dec. 16, 2015) (*citing Arch v. American Tobacco Co., Inc.*, 984 F. Supp. 830, 837–38 (E.D. Pa. 1997). However, under some circumstances, the Court may disregard the formal corporate identities and treat a subsidiary as the "alter ego" of its parent. The alter ego test for personal jurisdiction is less stringent than the veil-piercing test for liability. *In re Enterprise*, 735 F. Supp. 2d at 319 (citing *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985)).

The Court in *Arch* described a flexible, pragmatic inquiry into all relevant factors that relate to the intimacy of the parent-subsidiary relationship. 984 F. Supp. at 837. The *In re Enterprise* Court applied a ten-factor test, which offers a "discretely individuated and functional framework for this analysis." The ten factors include whether:

(1) the parent owns all or a significant majority of the subsidiary's stock,

(2) commonality of officers or directors exists between the two corporations,

(3) the corporate family possesses a unified marketing image, including common branding of products,

(4) corporate insignias, trademarks, and logos are uniform across corporate boundaries,

(5) corporate family members share employees,

(6) the parent has integrated its sales and distribution systems with those of its subsidiaries,

(7) the corporations exchange or share managerial or supervisory personnel,

(8) the subsidiary performs business functions that would ordinarily be handled by a parent corporation[5],

(9) the parent uses the subsidiary as a marketing division or as an exclusive distributor, and

(10) the parent exercises control or provides instruction to the subsidiary's officers and directors.

*In re Enterprise*, 735 F. Supp. 2d at 318-19. These factors establish a framework, although the unique details of the actual corporate relationship are critical. *Id*. at 317.

---

[5] This factor is difficult to apply to a holding company, because a holding company could simply hold a different type of subsidiary. *Id*. at 324.

Plaintiff must show that the degree of control exercised by the parent is greater than normally associated with common ownership and directorship. Plaintiff must show that the parent controls day-to-day operations of the subsidiary to the extent that the subsidiary appears to be a "mere department" of the parent. *Id*. at 318. Other ways to frame the inquiry are: whether the parent exercised its ability to control the subsidiary; whether the structure of the corporate family operated vertically as strategic business units; whether the parent in essence conscripted employees of the subsidiaries to discharge group-wide management functions across corporate boundaries; and whether the parent failed to adhere to corporate boundaries by exercising managerial power over the operations and functions of subsidiaries through employees of separate but affiliated corporations. *See generally id*. at 318-325.

In *Aetna Life Ins. Co. v. Huntington Valley Surgery Ctr.*, 2014 WL 4116963, at *4 (E.D. Pa. Aug. 20, 2014), the Court denied a parent holding company's motion to dismiss for lack of personal jurisdiction, noting that factual disputes arising from the record must be resolved in favor of the plaintiff. In *In re Latex Gloves Prod. Liab. Litig.*, 2001 WL 964105, at *6 (E.D. Pa. Aug. 22, 2001), the Court exercised personal jurisdiction over a parent company based on the "virtually total interrelationship of the corporate family and the pyramidal absolute control of the holding company -- all of which is presented to the public as one and the same entity." *Accord Directory Dividends, Inc. v. SBC Comm., Inc.*, 2003 WL 21961448, at *6 (E.D. Pa. July 2, 2003) (applying alter ego doctrine where subsidiaries were heavily integrated both horizontally and vertically and companies had a completely unified marketing image).

In *Pfizer Inc. v. Mylan Inc.*, 2016 WL 4362115, at *4 (D. Del. Aug. 12, 2016), the Court exercised personal jurisdiction under Delaware's "agency theory," which applies "not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group.'"

*Accord D'Jamoos*, 586 F.3d at 108 ("a wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state in which the activities occurred."); *Spiro v. Allied Bldg. Prod. Corp.*, 2013 WL 5270772, at *4 (E.D. Pa. Sept. 17, 2013) (exercising jurisdiction under agency theory). *In re Chocolate Confectionary Antitrust Litigation*, 641 F. Supp.2d 367, 400-03 (M.D. Pa. 2009), held that the plaintiff established a prima facie case that an ultimate parent corporation was an alter ego because it vertically managed the subsidiary through business units aligned with product groups rather than corporate boundaries.

In *Baker v. LivaNova PLC*, 2016 WL 5799388, at *3-5 (M.D. Pa. Sept. 29, 2016), the Court concluded that it lacked personal jurisdiction over a holding company. The *Baker* Court explained that evidence of a common corporate brand and statements in the parent company's annual report that it viewed the entire United States as a market for the product at issue was outweighed by evidence that the parent did not share any officers, directors, executives or employees with the subsidiaries, did not participate in the marketing or sale of their products, and did not exercise a managerial role over sales or day-to-day business activities. In *Northeastern Power Co. v. Balcke-Durr, Inc.*, 49 F. Supp. 2d 783, 790 (E.D. Pa. 1999), the parent and subsidiary maintained separate corporate records, filed separate tax returns, and there was no evidence that the parent controlled day-to-day operations. In *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411 (E.D. Pa. 2005), the Court declined to exercise personal jurisdiction over a parent holding company. However, that case is not on point because it addressed only general personal jurisdiction. During the oral argument, the Court asked about *City of Pittsburgh v. UPMC*, GD-13-005115 (Ct. Common Pleas of Allegheny County, June 25, 2014) (Wettick, J.). Upon review, the decision is of limited relevance because the issue was

whether a parent holding company was an "employer" as defined in the Pennsylvania Enabling Act, rather than personal jurisdiction.

There is evidence in the record in this case to support most of the ten *Enterprise* alter ego factors. CHI concedes that jurisdiction would be proper over CHESI. (Docket No. 66 at 15). CHI indirectly owns all of the stock of Safety Kleen and CHESI. CHI and CHESI share corporate headquarters and there is extensive overlap in officers and directors of the organizations. It appears that Safety Kleen and CHESI do not have their own CEOs; instead, all officers report to Alan McKim, the CEO of CHI. There is a common marketing image, with CHI holding itself out in its Annual Report as one entity with 13,000 employees. CHI has no independent sales or profits and conducts the entirety of its business through its subsidiaries. All of CHI's subsidiary companies use the "Clean Harbors" logo and there is a common "Clean Harbors" website through which customers of any subsidiary can purchase products and pay bills, although Safety Kleen has maintained a separate logo and website. There is no evidence that the subsidiaries exchange and/or share managerial or supervisory personnel among themselves. However, numerous corporate services (finance, legal, risk management, HR, Health & Safety, etc.) are provided to all Clean Harbors entities by CHESI employees. As a practical matter, it appears that CHI used CHESI to operate as the corporate headquarters staff for the entire Clean Harbors family. CHI issues one consolidated financial statement, based on accrual of its 128 subsidiaries into six marketing segments. CHI actively attempts to "cross-sell" across these marketing segments. Finally, viewed in the light most favorable to Plaintiff, CHI has demonstrated its exercise of control through its mandatory Health & Safety policy and Safety Alert regarding the precise safety issue that caused Hooper's injury.

Clearly, the structure of the Clean Harbors corporate family creates far more interdependence than the corporate structure in *Enterprise Rent-a-Car*. In *Enterprise*, the subsidiaries paid for the administrative services provided by the parent; issued separate balance sheets and separate annual reports; and the subsidiaries had authority over the employment practices that led to the FLSA claims in that case. By comparison, the Clean Harbors companies act as branches of one functionally-integrated organization, in which CHESI provides corporate services without cost to the subsidiaries and there is one consolidated financial statement and annual report for the whole Clean Harbors family. The Court concludes that Plaintiff has established a prima facie case sufficient to establish personal jurisdiction over CHI. It is possible that Safety Kleen has preserved sufficient independence to defeat the alter ego doctrine, but the present record is not sufficient to make that determination as a matter of law.

C. Fairness

The Court also concludes that the exercise of personal jurisdiction in this case would comport with fair play and substantial justice. As Plaintiff notes, CHI has litigated in this forum on several previous occasions. *See McGinnis v. Clean Harbors, Inc.*, Civil Action No. 11-261 (Erie); *Mastech Systems Corp. v. Clean Harbors, Inc.*, Civil Action No. 99-1567; *United States v. Allegheny Ludlum, et al*, Civil Action No. 97-1863 (CHI was an original defendant and filed counterclaims and cross-claims). Pennsylvania has more interest in adjudicating this dispute than Massachusetts because the accident occurred here. Many of the fact witnesses are in Erie. Hooper has an interest in obtaining relief in a convenient forum. In summary, the Court cannot conclude as a matter of law that the exercise of personal jurisdiction over CHI would be improper.

## IV. Conclusion

Based on the foregoing, the MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) ON BEHALF OF CLEAN HARBORS, INC. (Docket No. 42) is **DENIED**.

SO ORDERED this 13th day of December, 2016.

BY THE COURT:

s/ Nora Barry Fischer
United States District Judge

cc: **All counsel of record**
(Via CM/DOCKET)